Thank you, Your Honor. May it please the Court, my name is Ashkan Yikrangi, representing Antwi in this petition for review. I'm reserving three minutes for rebuttal. The issues before the Court are as follows. Whether the immigration judge properly found that the petitioner was not credible, and whether relief under the Convention Against Torture was waived on appeal. With regard to the first issue, there are five instances where the petitioner was found not credible. None of these perceived inconsistencies, however, are supported by substantial evidence. Which in your view is the most important of the five, or which finding of inconsistency is the most important in your view? Your Honor, I would say that the immigration judge found that the call was a major discrepancy, and the basis of that opinion found that there were discrepancies as it related to the call. However, there is no indication of any minor or major discrepancy. In fact, the petitioner testified that the phone call occurred the next day, and it was entirely consistent with the asylum application. Can I interrupt you for a second? Let me ask you to deal with this, which I think is at the heart of what you're talking about. The immigration judge says your client testified inconsistently not only about the date of the call, but about the date of the first attack, and says that by saying that he testified that it was either on the 23rd or the 25th. Put aside the 25th for a second. Looking at this record, it's pretty clear that he never testified that it was on the 23rd. That is correct, Your Honor. But he did once say it was on the 25th. He said that in response to a question from the government's attorney who posed it to him that way. So the first attack was on the 25th, and he said right, and then they went on. Is that enough to support the finding of an inconsistency? No, Your Honor. I don't believe it does, because specifically the government attorney asked the petitioner, Sir, the first time you were attacked was on December 26th, correct? And the petitioner went on to clarify, and he said, please, when I was attacked alone or when I was attacked to get out Sebastian? Then the government attorney clarifies the question and says, okay, what was the date that you were attacked while you and Sebastian were together? Then the petitioner responds with the 25th, and immediately after that response, the next question the department asked, so you were attacked alone on December 26th. So the department understood the question as it related to the 26th. The petitioner was clearly speaking about the 26th, and his testimony was entirely consistent but for the actual date. Even if you're right, though, even if we can credit this point in your favor, what about some of these other findings? Because there were findings that his description of the circumstances of the main attack were not consistent. There was a finding that the relationship with Sebastian was implausible, and there were findings about his demeanor, fairly detailed ones. Well, as it relates to his relationship with Sebastian, the immigration judge found that, and I quote, despite having such a lengthy history in seeing each other regularly, the immigration judge was distressed that the petitioner didn't know Sebastian's last name. But the petitioner did testify that his encounters with Sebastian were not regular and that he would see him very rarely. There's no indication in the record to support that the immigration judge finding that the petitioner would see Sebastian regularly, and I think the immigration judge respectfully failed to understand the nature of their relationship. What about the issue of the petitioner not raising a possible romantic relationship with Sebastian until much later? Well, I think it goes to what is understood to be a romantic relationship. Some would say a casual sexual encounter is not a romantic relationship, and I think this question might be answered differently by many people. Some people understand romantic to mean maybe dates, whereas maybe a sexual encounter wouldn't be considered romantic. How is that omission of this, as the IJ called it, romantic relationship, but as your client said, a one-time sexual encounter, how is it material to the claim here? I don't think it is, because the claim is about imputed sexuality. So the issue raised on appeal is that Antuy was being harmed because people in his community thought he was gay. Now, that wasn't the truth, and so essentially by the judge asking about the depth of their romantic relationship, seems to believe that there actually was a romantic relationship, whereas the respondent never testified to that. Does it bear at all, and the IJ didn't find this, so I'm not sure it matters in this case, but it does seem to me it may bear a bit on your client's credibility with respect to not remembering Sebastian's last name. Not only did he go to school with him and socialize with him on occasion, not only was he over to his uncle's house, but they also had at least this one-time sexual encounter. It seems to me it might be relevant to the, not the omission, but the fact itself might be relevant to the credibility determination, respecting your client's inability to remember details about Sebastian's identity. Well, that question assumes that he knew Sebastian's last name, and I think that in the context of the relationship they had where they had to keep things hidden, maybe he never knew. Did you, did Judge Bress have a question? We may have the same question, but did he advance that explanation before the IJ? No, Your Honor, but I don't think that that was the way that the question was posed. In short, he said that he honestly answered that he didn't know Sebastian's last name. I was going to ask a question that I must admit in advance I don't know the answer to, so I want to ask both sides this question. This is a case where I think it's clear some of the credibility determinations are supported by the record and some are not, and we're supposed to look at this case under the totality of the circumstances. Tell me what your best understanding of the totality of the circumstances test is. What does that mean? What do we do? Your Honor, I understand that post-real ID, inconsistencies don't need to go to the heart of the claim, but under the totality of the circumstances, essentially we should give weight to what would otherwise be a grant of asylum. In this situation, I would say that he had reasonable answers for all the questions asked, and in fact he was entirely honest when he didn't know an answer. There was also numerous assumptions by the IJ, and quite frankly, in reviewing the record and the transcript of the hearing, we had numerous unanswered questions. For example, the department seemed to understand that December 26th was the date of the attack, even though the record stated that the respondent testified otherwise. And then we have the issue regarding a telephone call that the immigration judge gave a lot of weight to, but her finding was not supported by the record. That one, it seems to me, is really tied up in the first one, right? Because the IJ said your client testified inconsistently about the date of the attack and testified that the phone call followed the attack, it's really the same finding, isn't it? I would say there are different findings aggregated to essentially... All arising from the same assumption that your client testified inconsistently about the date of the attack. That is correct, Your Honor. You wanted to save time for rebuttal. Do you want to save the rest or go on? Yes, please. Thank you. Let's hear from the government. May it please the court? My name is Nancy Safavi, and I represent the respondent in this case. This court should deny the petition for review because the agency found petition not credible, and there are three reasons supporting this adverse credibility determination. First, as the court has already asked Petitioner, there are credibility issues with the circumstances regarding his attack, regarding his relationship with Sebastian. Let's focus on the first one for a moment. You agree, do you not, that the petitioner never testified that the attack occurred on December 23rd? Yes. The issue, though, is he testified to multiple dates between his hearing testimony and his asylum application. Go ahead, Judge. Doesn't the IJ focus on December 23rd as being the major discrepancy here, and there was no testimony to that? Well, he focuses on the asylum application, and it's saying the 26th and the 29th for both of the attacks, and then in the testimony him saying then the 25th and then also the 21st. Well, the asylum application says the 21st. His declaration says the 21st for the first attack. Let's talk about the first attack. His application, his declaration, says the 21st. He testifies at least four times before the IJ that it's on the 21st, and then the exchange that we talked about with your friend about the 25th occurs a little bit later. The IJ says he testified that it was on the 23rd. That's simply a factual error, is it not? Yes. If so, my question is, doesn't that factual error, which infects, it seems to me, the first two findings mean that we can't have confidence in the credibility determination? Your Honor, Respondent would contend that the average credibility determination wasn't based solely just on the dates. It was based on multiple factors in the record. Take out the ones that are based on the dates, then. Assume for a moment they're not supported by the record. Under the totality of the circumstances, and I want to get back to some of them, do the remaining findings support an adverse credibility determination? It strikes me one is about a detail about whether he was inside the house or outside the house. The other, I'm not sure how supported it is, but it's how seriously he described his injuries to someone. It strikes me the heart of the adverse credibility determination here is that the IJ thinks your client is inconsistent about the date of the attack, the petitioner, and therefore inconsistent about the date of the phone call to Sebastian. If you take those out, can we really be confident under the totality of the circumstances that the IJ would have found this petitioner not credible? Yes, Your Honor. Respondent, we'd ask you to take note of the agency's demeanor finding. This court has case law specifically cited in our briefs, O'Shaughney and by the board, where the court does give special deference to a demeanor finding. We give special deference to findings that are supported by the record. I've asked you for purposes of this question to assume that the first two findings are not supported by the record. Now, we can get back to the 25th in a moment, but just assume that. Assume that those first two findings are not supported by the record. They're based on a factual error by the IJ who misread the testimony of this petitioner. We don't have to give deference to those two findings, do we? To the specific inconsistency findings? The inconsistency findings, if we determine those two inconsistency findings are not supported by the record, that they're based on a mistake by the IJ about what this Mr. Antwi testified to, we wouldn't give them deference, would we? So it's my understanding that under the totality of the circumstances, it wouldn't just be about whether or not those two inconsistencies. I agree with you. And we've departed from a test that used to say any single finding of an inconsistency by the IJ is enough to support it, even if the rest aren't supported by the record. We're now under this totality of the circumstances test. So I want to ask you the same question I asked your friend. How do we apply the totality of the circumstances test if, and I know you argue to the contrary, if we find that at least several of the inconsistencies are not supported by the record? How do we then determine whether the totality of the circumstances support the adverse credibility finding? I would suggest to the court that you could look to his cooperating evidence. So one of the other reasons that this immigration judge reached the adverse credibility determination was because the declaration of Uncle Ferry also did not support petitioner's claims. Isn't it also, doesn't the analysis have to depend on what the content of the inconsistency or the implausibility that we're talking about? Because a date, inconsistency in a date, could be determinative depending on the claim. Here I don't necessarily see what the difference is as to when it happened in terms of what his underlying claim is about. But we do have findings about the circumstances of the incident, and that is key to the persecution analysis, and his testimony did differ. We have findings about the implausibility of his testimony and his relationship with Sebastian, which we could disagree with, but I'm not sure it compels the opposite conclusion. And we have demeanor findings, and those seem to me to all go to sort of more central features of his claim. Yes, Your Honor, and if his claim for persecution is that he is a member of a particular social group based on imputed homosexuality, then it does matter whether or not he is being attacked because he's walking at home by himself, trying to, coming home from a soccer game, or whether he is inside the house and he sees Sebastian getting beaten up, and then he comes to his defense, or whether or not they are both walking together. Two attacks now. The first attack, the second attack is when he comes home from the soccer game. The first attack is outside his uncle's house. The inconsistency is whether or not Mr. Antwi was inside the house or outside the house when the attack took place. Correct? Correct. And why that matters is because if your claim is that there is imputed homosexuality, it matters then if individuals are seeing you with that person outside of your house, or if you're coming to his defense. It's two different things. And his asylum application initially doesn't even mention Sebastian. So one reasonable fact finder could look at this record and say, Sebastian was never mentioned in the asylum application, and the agency, both the board and the immigration judge, note these inconsistencies, and would a reasonable fact finder be compelled to overturn the decision? And the respondent's answer is no. Can we go back to this? By the way, before you leave, Sebastian is mentioned in his asylum application. I have a friend in Accra, Sebastian, who is gay, and there's a whole paragraph that describes Sebastian. So you're mistaken that he's not mentioned in the asylum application. Well, yes, sorry, that he's in a romantic relationship with Sebastian. Thank you. I wanted to go back to this supposed inconsistency regarding Uncle Ferry's testimony. Because, I mean, just describe to me how what Uncle Ferry had to say in his declaration is truly inconsistent. Sure, Your Honor. So Uncle Ferry said that on the first attack, he heard rumors that his nephew was attacked because of a romantic relationship with Sebastian, and so he tried to call him afterwards, but he didn't see him the next day. But then, if you look at the hearing transcript and the immigration judge's decision and the board's citation to it, the immigration judge notes that he was asked, so after this first incident where you were attacked, did you go home? And his answer is yes. And then he says, did you go to your uncle's house? And he says, it was my house, and it's a shared house. This is the second attack you're talking about? Yes. I didn't read the IJ to even be relying on this supposed inconsistency. If you look at the IJ's decision where he discusses the corroborating evidence and Uncle Ferry's decision... Well, he says he's not persuaded by the corroborating evidence to reach a different conclusion. Does he say that the corroborating evidence, the supposed corroborating evidence, is inconsistent with Mr. Entwee's account? I would have to look at... I don't think he does. I also, in looking at this record, all I see is Mr. Entwee saying, I returned to the house. He doesn't say, I then saw my uncle and had a conversation with him. So I'm not sure I see any inconsistency, even if we could find one the IJ didn't. So I would offer that the agency is given the responsibility of being the fact finders in this case, and their facts should be afforded deference, and the demeanor finding, especially, should be given special deference. But did the IJ or the agency find that Uncle Ferry, if I can call him that, Uncle Ferry's declaration was inconsistent with the story that Mr. Entwee told? If they did, I might have to... Yes. Where did they find this? It's my understanding that the agency is saying that it undermined his credibility, and it doesn't... that it was based on his asylum application dates, as opposed to his hearing testimony dates. So, I mean, I am happy to provide a letter to the court after arguing today, you know, outlining this to clarify. Well, no, we've got to read this to record. I'm just asking, as I'm stood here, I can't find it in the BIA decision. Yeah. It's a matter of bravado, so they adopt both. And I thought that the IJ said about the additional declarations was they didn't compel them to a different conclusion. But I can reread it and see if I'm wrong about that. Okay, Your Honor. Thank you. I see that my time has expired. Let me see if my colleagues have any further questions for you. We don't. Counsel, you've got yet about a minute and a half for rebuttal. Let's put two minutes on the clock for you. Thank you, Your Honor. Just a final point regarding the issue of whether he was inside his house. This idea that he ever claimed to be inside a house is not supported by the record. In short, he indicates that he saw what was happening and came out to defend Sebastian. He didn't say that he came out of his house to defend Sebastian. And both on direct and on cross, he always indicated that he was with Sebastian. So I also don't see how that's inconsistent. Well, and as to the Uncle Ferry Declaration, which I pulled, what the I.J. said was something I think different than what counsel said. The I.J. said Mr. Entwee said he came home after the attack, and Uncle Ferry said he didn't see him until the next day. And, of course, when you look at Mr. Entwee's testimony, he says he came home the day after the first attack. So I'm not sure there's any inconsistency there. Am I misstating what the record shows on that? I don't think so. I don't think there's any discrepancy or inconsistency, Your Honor. I don't think the I.J. gave the letter much weight in it, and it doesn't support his claim. It doesn't hurt his claim either. I think it's a neutral. But I don't think the I.J. I think I agree. I don't think the I.J. made a finding on this part of Ferry's declaration, but I think that means that there's nothing in this aspect of the I.J.'s decision that's unsupported either. Maybe you're saying the same thing. This point is sort of neutral. I am saying the same thing, Your Honor. Counsel, if you don't have anything more, and if my colleagues don't have anything more, this case will be submitted, and our thanks to both counsel for their briefs and arguments.
judges: HURWITZ, BRESS, THOMAS